UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

CORY S. OBRIEN and
MARY A. OBRIEN,

Debtors.

Case No. GG 09-00426
Chapter 7

_____/

OPINION REGARDING TRUSTEE'S OBJECTION
TO DEBTORS' AMENDED EXEMPTIONS
AND TRUSTEE'S MOTION FOR TURNOVER

Appearances:

Jeff A. Moyer, Esq., Grandville, Michigan, Chapter 7 Trustee.
Dawn I. Krupp, Esq., Grand Rapids, Michigan,
    attorney for Cory S. OBrien and Mary A. OBrien.

## I. ISSUES.

Cory S. OBrien ("Mr. OBrien") and Mary A. OBrien ("Mrs. OBrien") (collectively the "Debtors")[1] filed an amended Schedule C claiming their federal and state tax refunds as exempt. The Debtors were represented by Dawn I. Krupp ("Debtors' Attorney") throughout this case. Jeff A. Moyer ("Trustee") timely filed an objection to the Debtors' amended exemptions and requested a turnover of the refunds.

The Trustee has raised many objections to the amended exemptions. First, he argues that the amendment is "too late." Some support for this argument is found in a

---

[1] Some pleadings spell the Debtors' last names as "O'Brien" and others "OBrien." Because their tax returns have no apostrophe in their names, the court has used the "OBrien" spelling.

trilogy of recent decisions rendered by the two other bankruptcy judges in this district. Those decisions seem to state that once a debtor spends a tax refund or "dissipates" property of the estate, the debtor cannot amend to claim that property as exempt because it is "already gone." Second, as another type of "too late" objection, the Trustee asserts that the Debtors may only "add" property of the estate and claim exemptions for a period of fifteen days after filing their voluntary petition. Third, the Trustee argues that the Debtors' bad faith, concealment of the refunds, or reckless indifference mandates denial of the amended exemptions. Fourth, the Trustee asserts that because he has begun to administer the assets, prejudice to creditors will occur if the amended exemptions are permitted. Finally, the Trustee seeks to hold the Debtors' Attorney accountable for the delay in filing the amended exemptions. The Trustee characterizes this final issue as "what is the proper, fair and equitable result that does not unnecessarily punish these Debtors for their reliance on improper advice of counsel."

## II. JURISDICTION.

This court has jurisdiction over this chapter 7 bankruptcy case. 28 U.S.C. § 1334. This contested matter is a core proceeding. 28 U.S.C. § 157(b)(2)(B) and (E) (allowance or disallowance of exemptions and turnover of property of the estate). All proceedings and contested matters have been referred in this district to the bankruptcy court for determination. L.R. 83.2 (W.D. Mich.). This opinion constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

## III. FACTS.

A.   *Procedural Background and Debtors' Schedules.*

The Debtors filed their joint voluntary chapter 7 petition on January 19, 2009. At the time of the commencement of the case, Schedules and a Statement of Affairs were also filed. The Debtors owned no real property and had very limited personal property, mostly comprised of household goods, clothes, and a "free and clear" 2000 Chrysler minivan with 198,000 miles. (The Debtors' 2003 Dodge Durango truck was repossessed in September 2008.) In response to Schedule B - Personal Property, paragraph 18, "other liquidated debts owed to debtor including tax refunds," the Debtors answered "none." On Schedule D - Creditors Holding Secured Claims, the Debtors responded they had no secured creditors. On Schedule F - Creditors Holding Unsecured Nonpriority Claims, thirty-five creditors were listed. Of these creditors, twenty-seven (approximately 77%) resulted from unpaid medical or dental bills. Unsecured debts totaled $41,330. (In an amended Schedule F, the Debtors subsequently listed forty-three unsecured creditors, thirty of which were medical or dental claims, with total unsecured debt of $41,612.)

Regarding Schedule C - Property Claimed as Exempt, the Debtors elected the exemptions permitted under 11 U.S.C. § 522(b)(2),[2] the so-called federal exemptions. (Michigan is a non-opt-out state.) The Debtors claimed only $35 under § 522(d)(5), the "catchall" exemption. Therefore, any person, including the Trustee, could easily

---

[2]   The current Bankruptcy Code, as amended, is set forth in 11 U.S.C. §§ 101-1532. In this opinion all citations to the Bankruptcy Code shall be "§ ___."

ascertain that the *Debtors jointly had more than $20,000 in their unused § 522(d)(5) catchall exemption.*

On January 22, 2009, a Notice of Chapter 7 Bankruptcy Case was docketed and served upon parties in interest. The § 341 meeting was scheduled for February 24, 2009 and the court believes it occurred on that date.[3] On April 7, 2009, The Debtors filed amended schedules. In their (First) Amended Schedule B - Personal Property, the Debtors listed, in paragraph 18, a "2008 Federal Tax Return" in the amount of $5,000 and "2008 State Tax Returns" in the amount of $150. On their (First) Amended Schedule C, the aggregate amount of federal tax returns ($2,115 and $2,885) of "$5,000" was listed exempt. The state tax return, in the amount of $150, was also listed as exempt. Total catchall exemptions under § 522(d)(5) totaled $5,185 and the Debtors still had more than $15,000 remaining in unused § 522(d)(5) catchall exemptions.

Two days later, on April 9, 2009, the Trustee filed his Motion to Compel Turnover. (Dkt. 25.) The Trustee asserted the Debtors failed to disclose and exempt 2008 federal and state tax refunds in the amount of $4,114.00.

---

[3] This is based upon statements of counsel during argument and a transcript of the § 341 meeting. In this district, for reasons unknown to this judge, the holding and completion of a § 341 meeting is *not documented* on a case docket. On the docket in this case, there is an entry of the Trustee's Notice of Possible Dividends to Creditors, dated March 26, 2009. (Dkt. 19.) Also, there is the Trustee's Report of First Meeting Held, dated March 31, 2009. (Dkt. 20.) However, when one attempts to read the report, it is not there. A deputy court clerk informed this judge that trustees do not file an actual report but only "click a button" to make a docket entry which notes a report presumably exists. How helpful is this? How does one obtain information? Is there any method using the court's docket for an interested person to see whether (and when) a § 341 meeting was commenced, continued (if at all), or concluded? In this contested matter such information would have been very helpful. The court, as an administrative matter, may consult with the United States Trustee regarding this perceived problem. FED. R. BANKR. P. 9003(b).

4

On April 27, 2009, within the 30 day deadline to object to Debtors' amended exemptions, the Trustee objected to the Debtors' "belated exemption" of the tax refunds. The Trustee also asserted the Debtors were in "bad faith" and the circumstances "may very well reflect an intentional attempt by the Debtors to conceal this asset." Notwithstanding these assertions, the Trustee acknowledges that the Debtors disclosed in writing they had received their federal refund of $4,007 and would be receiving a state refund of $107 on the "Trustee's pre-meeting questionnaire." The Trustee also candidly recognizes that the Debtors orally disclosed the tax refunds to him at the § 341 meeting. Notwithstanding disclosure by the Debtors at the § 341 Meeting, the Trustee objects because the official amendments to Schedules B and C did not occur until "42 days after the § 341 meeting." In further support of his objection to the Debtors' amended exemptions, the Trustee asserts "reckless indifference" and also states that he had begun to administer the assets by sending correspondence and communicating with the Internal Revenue Service.

On June 2, 2009, the Debtors filed their (Second) Amended Schedules B and C. In these schedules, they modified information about their tax refunds; the federal refund was reduced from an aggregate amount of $5,000 to $4,100; and the state refund was increased from $107 to $197. Again, anyone could easily see the Debtors still had in excess of $17,000 in their remaining and unused federal catchall exemptions.

Legal memoranda regarding the two contested matters (turnover and objection to exemptions) were filed by the opposing parties. On August 12, 2009, the court held a hearing, heard testimony, considered the exhibits admitted, and reviewed the pertinent schedules. Because of the lateness of the day and because the court believed that the

contested matters could be expeditiously determined, the court did not permit the trustee (or the Debtors' Attorney) to make a final argument. The court rendered an extemporaneous oral bench opinion during which it made specific findings of fact and conclusions of law. See transcript of August 12, 2009 hearing, hereinafter, "Tr.", at 71 ("I find at this time that closing argument will not materially advance the litigation and I'm going to give an extemporaneous oral bench opinion.").

On August 19, 2009, the court prepared, signed and docketed its Order Overruling Trustee's Objection to Debtors' Exemptions and Denying Trustee's Motion to Compel Turnover. (Dkt. 49.) On August 29, 2009, the Trustee filed his Motion to Alter or Amend Judgment Under [Bankruptcy Rule] 9023 based, in part, upon the court's failure to permit closing arguments. The Trustee asserted that if the court "had the benefit of the closing arguments" that the outcome "may have been materially and substantially different." (Dkt. 51.)

This judge normally and routinely permits final arguments to be made as determined by the difficulty of the contested matter or adversary proceeding. After an adjournment requested by the parties, the court heard the motion to alter the judgment on December 16, 2009. (The Trustee appeared in support of his motion; the Debtors' Attorney did not appear.) On January 4, 2010, the court prepared, signed and docketed its Order Rescinding Court's Prior Order Overruling Trustee's Objection to Debtor's Exemptions and Scheduling Supplemental Argument Regarding the Trustee's Objection to Exemptions. (Dkt. 66.)

6

On January 27, 2010, the court heard final argument by the Trustee and the Debtors' Attorney. The court took the matter under advisement.[4]

B.    *Debtors' Economic and Family Circumstances.*

During the hearing, Mrs. OBrien and Mr. OBrien each testified credibly. The court finds both of them to be totally honest and truthful. However, the presentation of their testimony was somewhat confusing because of their attorney's scattered questions and the disorganized mode of presentation of the Debtors' case. One problem faced by the court is to determine what happened prepetition and what happened postpetition. In some instances, the time of occurrences is clear; in other instances, the court has drawn inferences to determine the timing of the Debtors' actions and activities.

Before the filing of the bankruptcy case, the Debtors were separated for a period of time. Mr. OBrien lived and worked in Colorado; Mrs. OBrien remained in Michigan with the Debtors' four minor children. Because of the separation, Mrs. OBrien and Mr. OBrien filed separate returns for the 2007 tax year. (Tr. at 44.) During 2007, Mrs. OBrien had income of $21,583 (Tr. at 30), and Mr. OBrien's income was $35,102 (Tr. at 35). Sometime during 2008, the Debtors again began living together in Michigan.

Between 2007 and 2008, the Debtors' income decreased. In 2008, Mrs. OBrien was under medical care "because of two blown-out discs in [her] lower back and [she] could no longer work." (Tr. at 31.) She lost her job and has not worked since then. Another serious health concern arose. Mrs. OBrien was diagnosed with fibromyalgia and has been under the care of "four or five doctors for over a year" and remains so

---

[4]    Because of the court's current extremely demanding docket, including the trial of a "giant adversary proceeding" (which has required 60 trial dates thus far), and realizing that determination of this contested matter is not time-sensitive, completion of this opinion has been substantially delayed.

currently.  (Tr. at 31.)   During 2008, Mr. OBrien was employed by two different employers, one of them located in another state.  (Tr. at 27.)  Although Mr. OBrien's income increased during the first part of 2008, his hourly increase of $3 per hour was more than offset by Mrs. OBrien losing her prior income of $15 per hour.

During the summer of 2008, the Debtors' Attorney initially consulted with the Debtors about a possible bankruptcy by meeting with Mrs. OBrien. (Tr. at 43.)  In December 2008, Mrs. OBrien returned, retained the attorney and provided documents to be reviewed.  (Tr. at 43.)

At the meeting with the Debtors' Attorney, Mrs. OBrien responded to questions about the Debtors' tax returns.  (Tr. at 45.)  Mrs. OBrien was then unable to estimate the amount of the refunds because of the marriage separation, subsequent reconciliation, and the changes in income levels -- Mr. OBrien's income "dropped dramatically working for the U.S. Post Office to Home Depot" and her income "had been cut off completely." (Tr. at 45.)  Believing that the refunds would likely be less than $5,000, the Debtors' Attorney and Mrs. OBrien decided to file an amendment when the amount was known. (Tr. at 46.)

*At the § 341 Meeting, the Debtors told the Trustee about tax refunds both orally and in writing.*  (Tr. at 48.)  Shortly after the § 341 Meeting, their attorney sent the Debtors amendments to be signed and filed with the court.  (Tr. at 49.)  There was a delay by the Debtors in returning the amended Schedules listing the tax refunds as a result of a number of circumstances beyond the Debtors' control.  Shortly after the § 341 Meeting, Mr. OBrien was laid off from his job.  (Tr. at 51.)  Family illnesses continued.  In addition to Mrs. OBrien's ruptured disc, Marissa, the third daughter of four

8

children in the family, had a recurrence of arthrogryposis, was "very ill" and "missed a lot of school." (Tr. at 51-52.)

This daughter's disease had again erupted around the time of the bankruptcy filing and continued during the early postpetition period; shortly after the § 341 Meeting, the daughter had her seventh surgery. The daughter's medical condition is akin to cystic fibrosis and, from birth, surgeries, therapies, and orthotic devices were, and are, required with on-going treatments by a gastroenterologist, a neurologist, a respiratory therapist and, sometimes, an orthopedic surgeon. (Tr. at 52-53.) During the delay in filing amended exemptions after the § 341 Meeting, in addition to Mr. OBrien losing his employment, Mrs. OBrien was visiting medical facilities for her daughter's needs.

After the filing of the case, Mrs. OBrien moved to Virginia to seek employment. She lived with Mr. OBrien's parents. (Tr. at 53.) She obtained employment at a hospital. While in Virginia, Mrs. OBrien managed to save about $500-$600 which was quickly used to pay for gasoline and other necessities. (Tr. at 55.) The Debtors had planned that Mr. OBrien and their children would move to Virginia at a later date when he could obtain an over-the-road trucking job to cover the moving expenses. This did not occur and Mrs. OBrien returned to Michigan to keep the family stable. (Tr. at 53-54.)

Also during the period after the § 341 Meeting, and after using a part of the tax refunds to cure past due rent, the Debtors were forced to vacate their rental premises because their landlord's property was foreclosed by his bank. The Debtors and their children became homeless. Another family permitted the Debtors, and their children, to move into their house. At the time of the hearing of the Trustee's objection to

exemptions and his turnover motion, the Debtors had zero income. Their friends, with whom they live, provide food on a charity basis and Mrs. OBrien's mother sends clothing for the children. (Tr. at 55.) Mr. OBrien, Mrs. OBrien and the children are trying to stay together until they can "get on [their] feet." (Tr. at 55.) Notwithstanding these challenging and depressing economic and medical circumstances, Mrs. OBrien remains optimistic. She is attempting to enter a work-study program at Ferris State and Mr. OBrien remains in the job market.

In reply to the Trustee's allegations of "bad faith," Mrs. OBrien responded that, although she is normally "a very detail-oriented person," the six months after filing the case was "a very stressful six months and [her] priority was [her] daughter and the [other] children." (Tr. at 58.) This testimony is credible and understandable. Also, the "prejudicial delay" argued by the Trustee resulted in part because Mrs. OBrien was in Virginia working while Mr. OBrien remained job-hunting in Michigan, making it difficult for the Debtors' Attorney to efficiently communicate with them. (Tr. at 60.)

Finally, based upon the entire record, the court finds that when the bankruptcy case was filed, the Debtors had not yet filed their tax returns; tax returns were filed postpetition; the Debtors received their federal refund shortly before the § 341 Meeting on February 24, 2009; as of the § 341 meeting they were still waiting for their state refund; the Debtors spent their tax refunds on necessities; and the Debtors filed their amended exemptions (Schedule C) after their tax refunds were "dissipated." Reiterating a portion of the procedural background to provide context, the Debtors filed their first amended exemptions on April 7, 2009, and their second amended exemptions on June 2, 2009.

10

## IV. DISCUSSION.

A.    *Is the Claimed Exemption Too Late Because the Property Is "Already Gone?"*

    1.    *The "Already Gone" Trilogy.*

Three recent decisions have been rendered by the other two bankruptcy judges in this district involving exemption issues raised by this Trustee. In re Phandanouvong, No. DG 08-10058, 2009 WL 3635877 (Bankr. W.D. Mich. Oct. 2, 2009); In re Trudell, 424 B.R. 786 (Bankr. W.D. Mich. 2010); In re Davidson, No. DG 10-00374 (Bankr. W.D. Mich. July 15, 2010). In this opinion, these prior decisions are referred to as the "Trilogy." The court shall address the Trilogy in order of decision.

The relief sought by the trustee in Phandanouvong (and its companion case Busher) was somewhat curious. The trustee objected to the debtors' amended Schedule C which claimed tax refunds as exempt. In re Phandanouvong, 2009 WL 3635877, at *1. However, the trustee "sacrifice[d]" potential "recovery [of the refunds] under § 542, § 549 or § 550" in an attempt to "obtain a 'pure legal' ruling" that the court considered to be tantamount to "an advisory opinion, which federal courts must avoid." Id. at *4-6.

In Phandanouvong, the court stated "where it is undisputed that the [d]ebtors have dissipated the [tax refunds], a declaration in favor of either party would have no significance." Id. at *4. It was further stated that "[i]f the [t]rustee is not seeking to recover the [tax refunds] or otherwise hold the [d]ebtors accountable for dissipating them, the court cannot grant meaningful relief *to the [t]rustee's two bankruptcy estates* by issuing a feckless declaration that denies the use of the [tax refunds] the [d]ebtors have already spent." Id. (emphasis in original).

11

In Phandanouvong, after discussing and citing prior decisions by the Supreme Court and Sixth Circuit which addressed the redressability of injury requirement, the court determined the contested matter was moot. "The court must decide issues presented for the purposes of resolving individual, concrete controversies, not to correct systemic wrongs by legislating from the bench." Id. at *6. However, in dicta, the court implied that if the trustee had sought relief to obtain redress of the estates' injuries resulting from the unauthorized postpetition transfers, rather than limiting his request to "declaratory sanctions for nondisclosures," the ruling might have been different. Id.

This judge agrees with the *result* of Phandanouvong. Given the Trustee's focused request for a "pure legal ruling" in the nature of an advisory opinion, Judge Dales declined to reach the question of whether a liberal exemption amendment policy is proper or whether debtors (or debtors' attorneys) should be routinely sanctioned.

The next Trilogy decision is Trudell. In re Trudell, 424 B.R. 786 (Bankr. W.D. Mich. 2010). In that case, the Trustee objected to the debtors' amendments which claimed tax refunds as exempt because the debtors failed to schedule or estimate the amount of refunds on their original schedules. Toward the beginning of the decision, the court stated the "Trustee's objection has been rendered moot because of the [debtors'] postpetition expenditure of the refunds after their receipt." In re Trudell, 424 B.R. at 787. The court then engaged in a discussion which states why a debtor may not claim an exemption after property is transferred; in effect, it is "too late."

In Trudell, the Trustee *conceded* that "the [debtors] 2008 tax *refund* qualifies for exemption under Section 522(d)(5)." In re Trudell, 424 B.R. at 788. The Trustee's last argument was that "the [debtors'] cannot now exempt the 2008 refund even if his other

12

arguments fail because they have already spent what they received." Id. at 788. The court agreed with the Trustee's assertion "that the [debtors] no longer have anything to exempt." Id. at 794. However, rather than merely denying the amended exemption, the court opted to say that the "Trustee's objection has been rendered moot by the [debtors'] premature expenditure of the refund claimed" because "the refunds are no longer part of the estate and would not be exemptible even if they are ultimately recovered." Id. In partial support of the "mootness" conclusion, Phandanouvong[5] is cited because "the trustee's actual objections to the exemptions claimed were not ripe because the refunds had already been spent." Id. The court opined that rather than objecting to the amended exemption, the Trustee should focus on whether the debtors should be "held accountable under Section 542 [turnover] for their premature expenditure of the refunds and whether avoidance and recovery is otherwise possible through Sections 549 [postpetition transfers] and 550 [recovery of transfers]." Id.

The last decision in the Trilogy is Davidson, which, at this time this opinion was written, is a slip opinion and order. In re Davidson, No. DG 10-00374 (Bankr. W.D. Mich. July 15, 2010). Davidson is very short and relies upon the two prior decisions in the Trilogy. Its operative rationale is: "[b]ecause the [d]ebtors have dissipated the tax refunds and [the estate] has not filed a recovery action, the question of whether the [d]ebtors properly claimed the exemption is moot -- the property is already gone." Davidson, slip op. at 2.

One must conclude that the Trilogy appears to establish a de facto statute of limitations (or at least a judge-imposed deadline) for any debtor to amend exemptions

---

[5] The Trudell court cites Busher which is the companion case.

13

relating to tax refunds.  According to the Trilogy, unless the actual amendment is filed before a tax refund is spent, it is "too late."  This judge equates this mootness conclusion to a *denial* of the debtors' amended exemption.  However, the Trilogy seems to recognize that a debtor may later fight the amended exemption battle with a trustee, but only in defense to a subsequent turnover action or a postpetition transfer avoidance (and recovery) adversary proceeding.

Does this legal rationale make practical sense?  More importantly, is this what the Bankruptcy Code, Bankruptcy Rules and binding (or highly persuasive) decisional law mandates?

2.     *The Trilogy Applied -- Hypothetical Cases.*

Before addressing the statutes, rules and decisional law, a hypothetical case may help illustrate the practical effect of the Trilogy.  Assume an individual debtor files a voluntary chapter 7 case on February 15 of a given year.  The filing is skeletal; the schedules and statement of affairs are filed fourteen days later, as permitted by applicable rule.  FED. R. BANKR. P. 1007(c) (schedules and statements must be filed within 14 days of bankruptcy petition).  On the debtor's initial schedules, a tax refund is disclosed on Schedule B and is properly claimed exempt on Schedule C.  However, between the filing of the petition and the filing of the initial exemption declaration, the debtor received and spent the entire amount of the tax refund to pay for food, postpetition medical services, utilities, or other necessities.  The rationale of the Trilogy

14

would mandate that the original claimed exemption of the tax refund is too late because the refund is "already gone." This result appears to be highly questionable.[6]

### 3. Determination of Property of the Estate.

Property of the estate, with few exceptions,[7] is determined on the bankruptcy filing date. § 541 (the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"). See generally Kenneth N. Klee, Bankruptcy and the Supreme Court 257 (2008) ("the date of filing of the bankruptcy petition operates as a date of cleavage when property of the debtor owned on that date passes into the estate and after-acquired property remains with the debtor").

A debtor's right to receive a tax refund is property of the estate. The seminal decision is Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511 (1966). In that opinion, the Supreme Court held that a loss-carryback from a prepetition year, which resulted in a postpetition tax refund, was property of the bankruptcy estate. The loss-carryback refund claim was so "sufficiently rooted in the pre-bankruptcy past" that it was regarded as "property [of the estate]." Segal, 782 U.S. at 380, 86 S.Ct. at 515.

---

[6] One can predict that the analysis of the Trilogy might be fine-tuned or distinguished to avoid the result in the hypothetical. It might be said the Trilogy only applies to amended exemptions. Change the hypothetical. The individual debtor files Schedules with the voluntary petition and estimates a tax refund of $1,000 and claims a $1,000 exemption under § 522(d)(5). Shortly thereafter, the debtor receives a refund of $1,500, promptly spends it on necessities, and thereafter promptly amends Schedule C to claim $1,500 exempt. (The debtor, as the Debtors in this contested matter, has a large amount of unused § 522(d)(5) catchall exemptions remaining.) Under the rationale of the Trilogy, it would be too late to claim the additional $500 of the tax refund as exempt because it is "already gone."

[7] For example, interest in property a trustee recovers under § 550 becomes estate property when recovered. § 541(a)(3). Also, certain property which the debtor acquires postpetition, such as an inheritance, may become property of the estate. § 541(a)(5)(A).

Eight years later, the Supreme Court again addressed whether tax refunds were property of the estate. Kokoszka v. Belford, 417 U.S. 642, 94 S.Ct. 2431 (1974). In that case, the individual debtor filed his bankruptcy petition on January 5, 1972, before he had filed his federal tax return and received his refund check. The Court concluded that the tax refund for the 1971 tax year was property of the estate because it was based upon the debtor's prepetition earnings. Kokoszka, 417 U.S. at 648, 94 S.Ct. at 2435 (the refund was "sufficiently rooted in the prebankruptcy past").

Segal and Kokoszka were both decided under the old Bankruptcy Act which was superseded by the Bankruptcy Code in 1978. Has the Bankruptcy Code changed those decisions' results? It has not. See, e.g., In re Meyers, 616 F.3d 626, 628 (7th Cir. 2010) ("Courts have recognized that tax refunds received after the petition may, in some cases, represent pre-petition assets and thus are part of the bankruptcy estate."); Benn v. Cole (In re Benn), 491 F.3d 811, 813 (8th Cir. 2007) ("A debtor's anticipated tax refund, to the extent it is attributable to events occurring prior to the filing of the petition for bankruptcy, is part of the bankruptcy estate."); Barowsky v. Serelson (In re Barowsky), 946 F.2d 1516, 1518 (10th Cir. 1991) ("the pre-petition portion of the refund essentially represents excessive tax withholding which would have been other assets of the bankruptcy estate if the excessive withholdings had not been made"); Doan v. Hudgins (In re Doan), 672 F.2d 831, 833 (11th Cir. 1982) (although Segal v. Rochelle was decided under Bankruptcy Act, it applies to Bankruptcy Code; tax refunds are property of estate).

In this contested matter, the Debtors' federal and state refunds for 2008 are property of their joint chapter 7 bankruptcy estate. Because the petition was filed on

16

January 19, 2009, the full amount of the refunds attributable to 2008 is estate property and no allocation between the prepetition and postpetition periods is necessary. See, e.g., In re Meyers, 616 F.3d at 627 (the Seventh Circuit discusses possible refund allocation methods between "the pre- and post-petition line" and notes "occasionally the job becomes challenging").[8]

4.     Determination of a Debtor's Exemptions.

The Supreme Court has long held that exemptions are determined on the bankruptcy filing date.   White v. Stump, 266 U.S. 310, 45 S.Ct. 103 (1924).   In examining a homestead exemption issue under the then-existing Idaho law, the Court stated:

> When the law speaks of property which is exempt and of rights to exemptions, it of course refers to some point of time. In our opinion this point of time is the one as of which the general estate passes out of the bankrupt's control, and with respect to which the status and rights of the bankrupt, the creditors and the trustee in other particulars are fixed.

White v. Stump, 266 U.S. at 313, 45 S.Ct. at 104.

Although White v. Stump, was decided under the old Bankruptcy Act, its ruling that a debtor's exemptions are determined as of the filing date remains good law under the Bankruptcy Code. Armstrong v. Peterson (In re Peterson), 897 F.2d 935, 937 (8th Cir. 1990) ("[W]e hold today that only the facts existing on the date of filing are relevant to determining whether a debtor qualifies for a claimed exemption."); Klein v. Chappell (In re Chappell), 373 B.R. 73, 77 (Bankr. 9th Cir. 2007) ("[E]xemptions . . . are determined on the date of bankruptcy and without reference to subsequent changes in

---

[8]  Any discussion of tax refund allocation issues will await a future contested matter that has its own facts and requires a decision to be made.

the character or value of the exempt property."), aff'd sub nom. In re Gebhart, 621 F.3d 1206 (9th Cir. 2010); Tibble v. Huntington National Bank (In re Fasick), 234 B.R. 891, 893 (W.D. Mich. 1999) ("Under the Bankruptcy Code, the rights of the parties are fixed as of the bankruptcy petition date."); Lasich v. Estate of A.N. Wickstrom (In re Wickstrom), 113 B.R. 339, 343-44 (Bankr. W.D. Mich. 1990) (whether under the old Bankruptcy Act or the current Bankruptcy Code, exemption rights are determined as of the date of the bankruptcy filing).

5.     In Most Instances, an Amended Exemption Relates Back to the Bankruptcy Case Filing Date.

Somewhat surprisingly, after conducting independent research, this judge discovered only two bankruptcy opinions that squarely state that an amended exemption will relate back to the bankruptcy case filing date. In re Martias, No. 07-20488-BKG-PGH, 2008 WL 906776, at *2 (Bankr. S.D. Fla. Apr. 3, 2008), aff'd, 2008 WL 7801998 (S.D. Fla. Nov. 24, 2008); In re Ball, 201 B.R. 204, 207 (Bankr. N.D. Ill. 1996). Each decision takes this legal result as a given without discussion.

The Martias and Ball decisions are consistent with bankruptcy law. Most property of the estate is determined as of the filing date. Therefore, when property of the estate exists, it would seem that, whether an exemption is claimed at the beginning of the case or whether an exemption is claimed later in the case by amendment, the exemption is determined as of the filing date. Regardless of when an exemption is subsequently claimed by a debtor in the case, it must relate back.

The Bankruptcy Code strongly supports this conclusion. Assuming a debtor desires to amend to use a § 522(d)(5) catchall exemption (as the Debtors did in this case), the debtor may exempt an "aggregate interest in any property, not to exceed in

18

*value* $1,075 plus [approximately one-half of any unused § 522(d)(1) exemption]." § 522(d)(5) (emphasis added).  When is this value determined?  According to § 522, *"'value' means fair market value as of the date of the filing of the petition* or, with respect to property that becomes property of the estate after such date, as of the date such property becomes property of the estate." § 522(a)(2) (emphasis added).[9]

Also, even if property is not scheduled, it is (and remains) property of the estate. § 554(d).  Even when a debtor neglects to list property, the unscheduled property is "property of the estate."[10]  In accordance with § 522(a)(2), unscheduled property, when later listed, would be valued as of the petition date.

In a case that involves a tax refund, the right to receive the refund has accrued as of the filing date, even if the amount is unknown and the refund is actually received postpetition.  For exemption purposes, a debtor may be required to amend Schedule C after the amount of the refund is known -- the amendment relates back to the filing date. The amount of the tax refund to be exempted (or not exempted) is likewise determined as of the filing date.  Also, sometimes the anticipated amount of the refund and the actual amount of the refund will differ (either increase or decrease); if a debtor receives more than expected, an amendment to exemptions will often be required. See, e.g., In

---

[9]  For example, an inheritance received by a debtor (or perhaps, more accurately, when a debtor first becomes entitled to receive an inheritance) within 180 days of the bankruptcy filing is valued at that time, postpetition, because the inheritance becomes property of the estate upon the debtor's entitlement to receive it.  In such a situation, the debtor would disclose and schedule the inheritance property and, to the extent possible, list it as exempt on an amended Schedule C.

[10]  Although it might be uncommon, one can envision instances when a debtor does not know he has an interest in particular property when his bankruptcy case is filed, e.g., a cause of action.  When a debtor first becomes aware of the property, it should be scheduled, even if reopening of the case may be first required.  § 350(b).

19

re Laroche, 409 B.R. 862, 865 (Bankr. E.D. Mich. 2009) (upon learning of tax refund, debtors "should have immediately contacted their attorney" to amend schedules "to accurately disclose such a significant change in their assets"). The amendment will relate back to the filing date.

6.    *The Interrelationship Between Amended Exemptions and a Trustee's Avoidance and Recovery of a Postpetition Transfer.*

To support the "too late" the property is "already gone" conclusion, there is succinct language in two of the Trilogy decisions. Trudell states:

> Therefore, it follows that if the debtor were to have transferred what is now the estate's interest in his car[11] either before the trustee had an opportunity to object or while the trustee's objection was pending, then there is nothing to return to him as exempt when the process is completed. Moreover, as Trustee also points out, property that has been voluntarily transferred from the estate *but then recovered as a postpetition transfer is no longer eligible for exemption.* Cf. 11 U.S.C. § 522(g).

In re Trudell, 424 B.R. 786, 793 (Bankr. W.D. Mich.) (emphasis supplied) (*footnote not in original*). Trudell then concludes "the [debtors] no longer have anything to exempt" because of their "premature expenditure of the [tax] refund claimed." Id. at 794.

In Davidson, the court explains:

> Because the [d]ebtors have dissipated the tax refunds and Chapter 7 Trustee Jeff A. Moyer (the "Trustee") has not filed a recovery action, the question of whether the [d]ebtors properly claimed the exemption is moot -- the property is already gone. See also In re Trudell, 424 B.R. 786, 793-94 (Bankr. W.D. Mich. 2010) (recognizing that the trustee's objection "has been rendered moot by the [debtors'] premature expenditure of the refund claimed").

In re Davidson, No. DG 10-00374, slip op. at 2 (Bankr. W.D. Mich. July 15, 2010).

---

[11]   Although the Trudell decision speaks of a "car," it is a tax refund case. The use of "car" is probably by analogy.

Both of these opinions seem to state that if a debtor makes a postpetition transfer of property, and a trustee *could* seek to avoid and recover the transfer (even if the trustee has not actually filed or completed an adversary proceeding to do so), a debtor is legally prohibited from exempting the property. *The opinions seem to say that what a trustee could do (i.e., avoid a transfer) is treated as accomplished.*

To explain why the rationale of Trudell and Davidson is unpersuasive will require extended discussion.

More than twenty years ago, this judge decided a case which partially addressed the interplay between exemptions and a trustee's avoidance and recovery powers. Lasich v. Estate of A.N. Wickstrom (In re Wickstrom), 113 B.R. 339 (Bankr. W.D. Mich. 1990). In Wickstrom, a chapter 7 trustee sued insider-transferees ("defendants") to avoid and recover a fraudulent conveyance and two preferential transfers. The defendants asserted that the trustee's action should be dismissed, or that summary judgment should be granted in defendants' favor, based upon a so-called "no harm, no foul" analysis. Specifically, the defendants argued that, because the debtor transferred exempt or exemptible property (a worker's compensation payment and real property held by the entireties), there was no diminution of the estate.

Although the analysis in Wickstrom covers a lot of ground,[12] three principles are pertinent in this contested matter. First, under the Bankruptcy Code (as compared to the prior Bankruptcy Act), property of the estate includes exempt property. In re Wickstrom, 113 B.R. at 347. As a corollary, property remains property of the estate, even if it is exemptible, until such time the exemption is actually claimed and the

---

[12]   A fair amount of the Wickstrom discussion addresses the prepetition transfer of entireties property.

objection period passes.   § 522(*l*); FED. R. BANKR. P. 4003(b).   Compare Taylor v. Freeland & Kronz, 503 U.S. 638, 112 S.Ct. 1644 (1992) (when an exemption is claimed, the trustee must timely object or the claimed exemption, even if legally invalid, is allowed), with Schwab v. Reilly, ____ U.S. ____, 130 S.Ct. 2652 (2010) (a trustee is not required to object to a debtor's asserted scheduled value of property in connection with the exemption allowance process when the amount of the claimed exemption is within the legal limit of the statutory exemption amount).

Second, exemptions are determined as of the filing date.   Wickstrom, 113 B.R. at 343-44 (the time to determine exemptions is the same under the current Bankruptcy Code and the old Bankruptcy Act).   Therefore, as another corollary, on the filing date, if a debtor has no interest in particular property because he voluntarily transferred it prepetition, the debtor may not exempt the transferred property.   Barbera v. Nathan (In re Barbera), 156 F.3d 1228, 1998 WL 393759 (6th Cir. 1998) (unpublished table opinion) (where debtor secretly transferred ordinarily exempt property prepetition, the exempt status was destroyed and debtor could not restore the exempt status by amending his schedules).

Third, the right to exempt property is a personal right of the debtor; prepetition transferees may not assert the possible exemptibility of property in defense to an avoidance action.   In re Wickstrom, 113 B.R. at 351; accord Tavenner v. Smoot, 257 F.3d 401, 407 (4th Cir. 2001) ("Potentially exempt property can be used to satisfy the demands of the creditors if the debtor never claims the exemption.   Thus, the so-called 'no harm, no foul' approach is inconsistent with the Bankruptcy Code."); Fox v. Smoker (In re Noblit), 72 F.3d 757, 758-59 (9th Cir. 1995) (defendants do not have standing to

22

assert the debtor's homestead exemption as a defense to the trustee's preferential transfer avoidance action).

A recent appellate decision from this district further considers the parameters of the Wickstrom principles. Nino v. Moyer, 437 B.R. 230 (W.D. Mich. 2009) (Bell, J.). In Nino, a debtor and his non-debtor wife purchased real property in 1997 and held it jointly as entireties property. In February 2006, the debtor and his wife transferred the property solely to the wife, thereby severing the entireties estate. In April 2006, on the advice of the debtor's bankruptcy attorney, the wife transferred the property back to the debtor and herself, to again be held as entireties property. Less than two weeks later, the husband debtor filed a voluntary chapter 7 bankruptcy case.

In Nino, the chapter 7 trustee filed an adversary proceeding to avoid the February 2006 transfer by which the debtor and his wife severed the entireties estate to place the property solely in his non-debtor wife's name. The bankruptcy court correctly dismissed the trustee's avoidance complaint because the property was already property of the estate. *Under the Nino facts*, the trustee's avoidance action was of no consequence whatsoever.

That should have been the end of it. However, the trustee also filed an objection to the debtor's claimed exemption in the retransferred entireties property of the estate. The bankruptcy judge then issued an "opinion [which] stated that [the debtor] would not be entitled to the exemption if the court determined after an evidentiary hearing that the [transfer of entireties property] was fraudulent." In re Nino, 437 B.R. at 232.

The Nino debtor argued that a "no harm, no foul" rule under *state law* applied to the transfers. For example, it is not fraudulent to transfer entireties property to one

23

spouse because the transferred property is still available to creditors. See, e.g., Farrell v. Paulus, 309 Mich. 441, 445, 15 N.W.2d. 700, 702 (1944). Further, in accordance with the Nino facts, the property was retransferred back into entireties property *before* the bankruptcy petition was filed. Therefore, the entireties property was part of the Nino debtor's estate and could be claimed as exempt.

Although it is less than clear, the bankruptcy court may have relied upon Wickstrom to reject the *state law* "no harm, no foul" rule. In the district court's appellate decision, Wickstrom is partially distinguished based upon three hypothetical examples in the Wickstrom analysis. In re Nino, 437 B.R. at 236-37. This was not necessary because the result in Wickstrom is inapplicable to the Nino facts. In Nino, the entireties property was titled in the debtor's and his non-debtor wife's names *as of the filing date*. In Wickstrom, the transferred entireties property was *not* in the debtor's name as of the filing date.

Also, the "no harm, no foul" *state law rule* addressed by the Nino district appellate court is different from the so-called "no harm, no foul" assertion addressed in Wickstrom. In Nino, the debtor was claiming his own exemption as of the filing date. In Wickstrom, a transferee of potentially-exemptible property was asserting a debtor's possible exemption that did not exist. In Wickstrom, the debtor had voluntarily transferred the property prepetition and could not claim an exemption in the property; the transferee could not utilize the debtor's personal right to claim a possible exemption; further, *after recovery* by the trustee, the debtor could not claim an exemption in the recovered property.

24

When one examines the facts in existence as of the filing dates in the <u>Nino</u> and <u>Wickstrom</u> cases, it is apparent that the decisions are not in conflict and are complementary to each other.  As succinctly stated by the <u>Nino</u> appellate court:

> There is no dispute that Debtor held the Property as entireties property with his wife at the time of filing the petition for bankruptcy.  This situation represents another form of a "no harm, no foul" rule because Debtor and his wife have returned the Property to the state of ownership from prior to the First Transfer.  There is no evidence of harm to or preferential treatment of Debtor's creditors, as in <u>Wickstrom</u>.  *Debtor has not removed the Property from the bankruptcy estate as of the date of filing the petition,* and by recording the quitclaim deeds, there is no indication that Debtor has attempted to conceal either the First Transfer or the Second Transfer, as in <u>Barbera</u> [156 F.3d 1228, 1998 WL 393759 (6th Cir. 1998) (unpublished table opinion)].

<u>In re Nino</u>, 437 B.R. at 238 (emphasis supplied).

The district court's appellate analysis in <u>Nino</u> acknowledges two legal principles. First, when a debtor transfers property prepetition but a trustee (on behalf of the bankruptcy estate) or the debtor recovers or receives the *same* property postpetition, the property may not be exempted.  Second, when a debtor transfers property away prepetition and then receives a retransfer the *same* property back prepetition, the property may be exempted.  These results are consistent with the Bankruptcy Code and <u>White v. Stump</u> because exemptions are determined as of the filing date.

What is the result when a debtor transfers property of the estate postpetition, i.e., after the filing date?  What is the relationship to claimed exemptions or the possibility of amended exemptions?  The analysis is much more complicated.

Transfer of estate property in this situation is a postpetition transaction.  § 549. However, postpetition transfers may be divided into two categories -- those which are avoidable and those that are not.

An avoidable postpetition transfer occurs when a debtor (1) transfers property of the estate, (2) after commencement of the case (the filing date), (3) that is not authorized by the Bankruptcy Code or by the court.  § 549(a).[13]

To determine whether a postpetition transfer is avoidable, a trustee must establish that a "transfer" occurred, § 101(54), and that the transfer involved property of the estate, § 541.[14]  A trustee has the presumption that the transfer was not authorized by the Bankruptcy Code or court; the transferee must establish authorization for a debtor's transfer of the property.  FED. R. BANKR. P. 6001 ("Any entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof.").

In some situations, the analysis may be muddled and the result may differ when a debtor has transferred property postpetition which was previously claimed as exempt. If the property is exempt and therefore it has been removed or "reclaimed" from the estate, arguably no avoidable transfer has taken place.  Schwab v. Reilly, ___ U.S. ___, 130 S.Ct. 2652, 2663-64 (2010) ("exemptions represent the debtor's attempt to *reclaim*

---

[13]  In this opinion, it is not necessary to address the limited defenses that exist to defeat avoidance of postpetition transfers.  See, e.g., § 549(b) and (c).

[14]  When seeking to recover a postpetition transfer of tax refunds, sometimes a trustee may encounter a difficult, and perhaps insurmountable, problem in meeting the burden of showing that property of the estate was transferred.  In instances when tax refunds were comingled in a debtor's bank account with postpetition earnings of the debtor, which are not property of the estate, § 541(a)(6), how does a trustee prove that the transferee received tax refunds rather than postpetition earnings?  (This proof problem generally does not exist when a specific parcel of realty or identifiable item of personal property is transferred.)

those assets or, more often, certain interests in those assets, to the creditors' detriment") (emphasis added).

If the exemption is properly listed and certain property is then removed or "reclaimed" by the debtor, the trustee shall be unable to prove that *property of the estate* has been transferred. However, in a circumstance where a debtor lists an exemption and the trustee timely objects, the court may be called upon to determine whether the exemption is valid *before* a determination is made whether an avoidable postpetition transfer has occurred. If the property is fully exempt, and hence "reclaimed" from the property of the estate by the debtor, there will be no avoidance, § 549(a), or possible recovery, § 550(a). However, if the property is not exempt, or only partially exempt, a trustee may avoid and recover the non-exempt portion of the specific property of the estate transferred, or the value of the property.

*After* successful avoidance, a debtor may not then exempt the property subject of the avoidance. § 551 ("Any transfer avoided under section . . . 549 . . . is preserved for the benefit of the estate but only with respect to property of the estate."). Further, after the court orders a recovery of the value of the avoided transfer, § 550, the debtor may not exempt the property or its value.[15]

_____

[15] One major exception exists to these conclusions. If the transfer was an *involuntary* transfer, the debtor may later claim an amended exemption. § 522(g); Wickstrom, 113 B.R. at 346, n. 7 and 8; see Stornawaye Fin. Corp. v. Hill (In re Hill), 562 F.3d 29 (1st Cir. 2009) (discussing § 522(g) and a debtor's claimed exemption in property that a "trustee" recovers); Tavenner v. Smoot, 257 F.3d at 406-07 (recognizing a debtor may exempt property from a trustee's recovery under certain circumstances covered by § 522(g)).

This court has reviewed an unpublished Sixth Circuit decision which addresses amended exemptions and postpetition transfers.[16] Eakin v. Dettmann (In re Eakin), No. 05-2173 (6th Cir. July 24, 2006). Eakin involved a claimed federal exemption in entireties real property, an amended exemption under state law in the same property and, in the face of the trustee's objections to both claimed exemptions, an unauthorized postpetition transfer by the debtor and her non-filing spouse -- all in an attempt to thwart the trustee from administering the real property.

Eakin filed her chapter 7 bankruptcy case on March 4, 2004. She claimed an exemption in her residence, held as entireties property with her non-filing husband, under § 522(d)(1) and (d)(5). [The trustee objected to the exemption because the (d)(5) catchall exemption was overstated. The debtor had claimed $17,425 under (d)(1) and over-claimed $8,725 under (d)(5).] After the trustee filed his objection to the claimed exemption on April 30, 2004, Eakin and her husband executed a quit claim deed, on May 4, 2004, to transfer the residence to the George Eakin and June A. Eakin Revocable Trust ("Trust"). This transfer by quit claim deed was not disclosed. On May 25, 2004, after the transfer to the Trust, Eakin switched her exemption from federal to state and claimed the property as exempt by the entireties. The trustee filed an objection to the amended entireties exemption. [At a hearing on August 6, 2004, the court heard argument and, after taking the matter under advisement, issued a memorandum order on October 7, 2004. Although the order stated an "unauthorized

---

[16] The decision is titled as an "Order," not an "Opinion." It is a "Slip Order" and has not been published in Westlaw or in the Federal Appendix. The case arose in this district in the Northern Division before Judge Stevenson who entered the bankruptcy court's opinion that briefly considered exemptions and postpetition transfers. In this opinion, the facts and procedural history not in the Sixth Circuit's Order but gleaned from the bankruptcy court's docket and pleadings are designated in brackets.

post-petition transfer of property of the estate is avoidable by the [t]rustee," Order at 2, there was no avoidance action in existence when the court denied the debtor's claimed exemption in the real property. During the appellate process, this procedural history apparently became garbled and both the district court and the Sixth Circuit believed a postpetition transfer avoidance action had occurred.]

Relying upon somewhat confusing record below, the Sixth Circuit determined that Wickstrom applied and stated "where . . . a debtor makes a conscious choice not to treat exemptible property of the estate . . . as exempt, the property loses its exempt status." In re Eakin, slip order at 3.

Further, in Eakin, the Sixth Circuit affirmed the bankruptcy court's nonexistent postpetition transfer avoidance and the trustee's pending objections to Eakin's claimed exemptions in the residence. [After appeal, the bankruptcy docket implies that the trustee settled the dispute for over $20,000 as the estate's share of the non-exempt real property.]

The unpublished Eakin Order is not binding. However, it is persuasive for the proposition that *after* a trustee avoids a transfer, a debtor may not then claim the property as exempt. This judge believes that, even if the Sixth Circuit had known that no postpetition transfer avoidance occurred, the bankruptcy court's decision would have been correctly affirmed because of bad faith by Eakin and the serious prejudice caused by Eakin to the bankruptcy estate.

There is another reason why the "dissipation" of a debtor's tax refunds may not result in an amended exemption being "too late." This relates to the concept of "fungibility."

29

In short, "fungible" means "interchangeable." Peter Moles & Nicholas Terry, The Handbook of International Financial Terms (Oxford Univ. Press 1997). In a longer explanatory definition of "fungibles," a leading law dictionary states:

> Where a thing which is the subject of an obligation (which one man is bound to deliver to another) must be delivered *in specie*, the thing is not fungible; that very individual thing, and not another thing of the same or another class, in lieu of it, must be delivered. Where the subject of the obligation is a thing of a given class, the thing is said to be fungible; *i.e.*, the delivery of any object which answers to the generic description will satisfy the terms of the obligation.

Black's Law Dictionary 607 (5th ed. 1979).

The Supreme Court, albeit in a different context, has stated: "Because dollars are fungible . . . a complete remedy is available at law . . . ." Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 49 n.7, 109 S.Ct. 2782, 2794 (1989) (discussing and deciding whether defendant which has not filed a proof of claim is entitled to a jury trial in a bankruptcy court adversary proceeding to avoid and recover alleged fraudulent transfers).

Like money, tax refunds are often fungible. Before a refund is received, the right to receive a tax refund seems to be fungible. The right to the refund is akin to an account receivable. However, after a refund check is received, cashed, and deposited, it is money, and is therefore fungible. When a trustee seeks a turnover of a tax refund, it does not matter whether the same identical dollars from the refund are turned over or whether the money comes from another source, e.g., postpetition earnings. From the bankruptcy estate's perspective, the source of the non-exempt money does not matter.

30

7.    *Putting the Links of the Chain Together.*

When a debtor amends exemptions claiming the right to receive tax refunds (or the refunds after receiving them) as exempt, the amendment relates back to the filing date. When a trustee timely objects to an exemption, the court must determine whether the amended exemption shall be permitted in total, permitted in part, or totally denied. To determine this issue, a bankruptcy court is required to analyze the totality of circumstances. See Part IV. C.-E. below.

When a trustee files a turnover motion to recover a tax refund, if the trustee is successful, he obtains turnover of the refund itself or the value of the refund. § 542(a); Bailey v. Suhar (In re Bailey), 380 B.R. 486 (Bankr. 6th Cir. 2008). Contra Brown v. Pyatt (In re Pyatt), 486 F.3d 423, 429 (8th Cir. 2007).[17]

When a trustee has filed a turnover motion relating to specific property or the value of that property and the debtor has filed amended exemptions to claim the property sought to be turned over (it really does not matter which filing occurred first), it is prudent for the court to hear the turnover motion and the trustee's objection to the debtor's amended exemptions during a combined hearing. To the extent amended exemptions are denied, the trustee is entitled to a turnover order for the property itself or the value of the property. To the extent the amended exemptions are permitted (and the property is "reclaimed" by the debtor), the trustee is not entitled to turnover.

---

[17]    This judge, as did the Sixth Circuit BAP in Bailey, respectfully disagrees with Pyatt. Most importantly, the 8th Circuit panel in Pyatt does not adequately appreciate the differences between the old Bankruptcy Act and the current Bankruptcy Code. As a practical consideration, requiring a chapter 7 trustee to chase down multiple transferees who received postpetition transfers will often be impossible. Also, Pyatt does not consider that the property of the estate transferred in that case was fungible. It should not matter whether a debtor is required to return the same dollars he actually transferred or some other fungible dollars.

When an action to avoid or recover a postpetition transfer is filed, it is prudent for the court to first determine whether the property has been properly exempted by the debtor or not. When an amended exemption is pending, and a trustee's timely objection needs to be litigated, the exemption determination should be made prior to the postpetition transfer litigation. Although the trustee will be a party in the contested exemption determination and the postpetition transfer adversary proceeding, the other parties will differ. (The debtor is a party to the exemption matter; a non-debtor transferee is a party to the postpetition transfer adversary proceeding.) Before it is determined whether an avoidable postpetition transfer has occurred, it must be known whether the transfer involved property of the estate. (In the postpetition transfer action itself, often this cannot be litigated because the transferee cannot assert the debtor's personal exemption rights.) Of course, *after* a trustee avoids a transfer, a recovery is awarded or a turnover is ordered, *only then* is it "too late" for a debtor to exempt the property. § 522(g).

The "already gone" *Trilogy* states that it is too late for a debtor to amend exemptions if property has been transferred postpetition, even in absence of a trustee's postpetition transfer avoidance and recovery. See, e.g., In re Trudell, 424 B.R. at 793 (discussing § 522(g)); In re Davidson, slip op. at 2 (denying exemption as too late even though the trustee had *not* yet filed a recovery action).[18] This judge respectfully disagrees with the analysis and results of the Trilogy.[19]

---

[18]  Other decisions have implicitly permitted a debtor to claim an amended exemption to a tax refund after it has been spent. See, e.g., Doan v. Hudgins (In re Doan), 672 F.2d 831, 832 (11th Cir. 1982) (debtors received refund in April, spent it, and listed amended exemption in September; the court permitted amendment because there was no intentional or fraudulent concealment).

B.    *Is the Claimed Exemption "Too Late" Because the Debtors May Only "Add" Property for a Specified Time Period?*

The Trustee again advances an argument that has been previously rejected. He asserts that a "reading of the combined provisions of [Bankruptcy Rules] 400(3)(1) [sic], 1007(c) and the statutory provisions of § 521(a)(1)(B)(i) are not only mandatory and compulsory, but [require] the Debtors to list all property of the estate as defined in § 541(a) within 15 days of filing the petition . . . ."

This argument has previously been carefully considered and addressed in this district. In re Thomasma, 399 B.R. 20 (Bankr. W.D. Mich. 2008). Thomasma persuasively rejects the Trustee's argument. This judge accepts Judge Hughes' analysis and adopts his holding in Thomasma.

However, similarly to Thomasma, the court must now examine the Trustee's allegations of the Debtors' bad faith, and assertions of concealment or nondisclosure of

---

Another recent decision is illustrative. Moyer v. Hollingshead (In re Hollinshead), 438 B.R. 354, 2010 WL 727969 (Bankr. 6th Cir. 2010) (unpublished table opinion). In this case, a pro se debtor filed a chapter 7 bankruptcy and failed to disclose a 2008 tax refund or claim the refund as exempt. The Trustee filed a motion for turnover of the refund. The debtor sent a letter to the bankruptcy court stating that she spent the refund on utility bills, health supplies, and clothing for her children. At the turnover hearing, the court advised the debtor that she could amend her schedules to list the refund and claim it as exempt. In re Hollinshead, 2010 WL 727969 at *1-2. Later, the debtor filed an amendment to her schedules to disclose the refund and also claimed the refund as exempt. The Trustee objected to the amended exemption and, at a later hearing, after hearing the debtor's testimony, the court overruled the objection and "treated the [d]ebtor's exemption of her entire 2008 refund as allowed." Id. at *3. On appeal, the bankruptcy appellate panel affirmed. Id. at *6. Although not directly before either court, neither court determined that the amended exemption should be denied because it was spent or "already gone."

[19] This judge reiterates that he agrees with Judge Dales in Phandanouvong to the extent he declines to give an advisory opinion or a "pure legal ruling."

33

property of the estate. The Trustee's allegation of prejudice to the estate will also be considered.

C.      *The Basics and the Burden of Proof.*

The Bankruptcy Code succinctly requires that a "debtor shall file a list of property that the debtor claims as exempt under [§ 522(b)]." § 522(*l*). Unless a party in interest [normally the trustee or sometimes a creditor] objects, the property claimed as exempt on such list is exempt. Id.

The Bankruptcy Rules parrot the Code. "A debtor shall list the property claimed as exempt under § 522 of the Code on the schedule of assets required to be filed by Rule 1007." FED. R. BANKR. P. 4003(a). To object to an exemption, or exemptions, a party in interest must timely object to the list of exempt property within a specified time. FED. R. BANKR. P. 4003(b). The current deadline is "within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." FED. R. BANKR. P. 4003(b)(1); cf. In re Kazi, 985 F.2d 318, 323 (7th Cir. 1993) (after the amendment, a new 30-day period commences for added or revised exemptions but not for unchanged exemptions). As would be expected, "[a] copy of any objection shall be delivered or mailed to the trustee, the debtor and the debtor's attorney . . . ." FED. R. BANKR. P. 4003(b)(4).

If no timely objection is lodged by a party in interest, the property listed as exempt becomes exempt even when the claimed exemption is legally invalid or asserted without good faith. Taylor v. Freeland & Kronz, 503 U.S. 638, 112 S.Ct. 1644 (1992). However, when a debtor claims a legally valid exemption under § 522(b), a

34

party in interest is not required to object to the debtor's scheduled *value* of the exempt property which may be asserted in conjunction the debtor's list of exempt property. Schwab v. Reilly, ___ U.S. ___, 130 S.Ct. 2652 (2010); In re Cormier, 382 B.R. 377 (Bankr. W.D. Mich. 2008) (the fact that the listed exemption amount and scheduled value are identical does not result in so-called "in kind" exemption which removes property from the estate).

The Bankruptcy Rules explicitly provide that "the objecting party [more often than not, the trustee] has the burden of proving that the exemptions are not properly claimed." FED. R. BANKR. P. 4003(c). The objecting party must disprove the validity of a claimed exemption by a preponderance of evidence. Barrows v. Christians (In re Barrows), 408 B.R. 239, 243 (Bankr. 8th Cir. 2009) (citing Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654 (1991)); see also Hamo v. Wilson (In re Hamo), 233 B.R. 718, 723 (Bankr. 6th Cir. 1999) ("The burden is on the trustee to establish, by a preponderance of the evidence, that the exemption should be disallowed."); In re Mann, 201 B.R. 910, 915 (Bankr. E.D. Mich. 1996) ("The trustee, as the objecting party, has the burden of producing evidence which rebuts the *prima facie* presumption that the exemption is correct."). Mere allegations by a trustee are insufficient; specific evidence is required. Corcoran v. Publow, 418 B.R. 231, 235 (E.D. Mich. 2009).

It is the bankruptcy judge's obligation to consider all facts and give the appropriate weight to the various circumstances. See In re Barrows, 408 B.R. at 244 ("the bankruptcy judge was in the ideal position to evaluate the veracity of the [d]ebtors as they testified at trial"). This court will consider the entire record together with the requisite legal authority discussed below. In re Millsaps, 774 F.2d 1163, 1985 WL

13737, at *1 (6th Cir. 1985) (unpublished table opinion) (it is up to the fact finder to determine credibility and whether the debt had an intent to conceal a tax refund).

Considering these basics, and being mindful of the Trustee's burden, the court turns to the various types of objections. Bad faith nondisclosure, possible prejudice to the estate, and the involvement of the Debtors' Attorney shall all be considered in turn.

D.     *Should the Amended Exemption Be Denied Because of the Debtors' Asserted Concealment, Bad Faith or Reckless Indifference?*

In the Sixth Circuit, a debtor may freely amend schedules. "We hold that under Rule 110 of the old Federal Rules of Bankruptcy Procedure and Rule 1009 of the new Rules the debtor may amend his list [of exempted property] as a matter of course at any time before the close of the case." Lucius v. McLemore, 741 F.2d 125, 126-27 (6th Cir. 1984) (also recognizing that the Advisory Committee Note to Bankruptcy Rule 1009 "reaffirms the legislative intent to allow amendment as a matter of course for schedules, including lists of exempt property").

However, a debtor's ability to amend exemptions is not without limits; constraints exist. "Courts may still refuse to allow an amendment where the debtor has acted in bad faith or where property has been concealed." Lucius v. McLemore, 741 F.2d at 127 (citing Doan v. Hudgins (In re Doan), 672 F.2d 831, 833 (11th Cir. 1982)).

When a debtor amends his schedules to add a tax refund: "The crucial question . . . becomes whether the debtor's nondisclosure of the tax refund was in bad faith or fraudulent." In re Millsaps, 774 F.2d 1163, 1985 WL 13737, at *1 (6th Cir. 1985) (unpublished table opinion). It is up to the bankruptcy court, as the finder of fact, "to determine credibility and whether there was intent to conceal." Id. "In the context of an amendment to exemptions, bad faith is determined by an examination of the totality of

36

the circumstances." Moyer v. Hollinshead (In re Hollinshead), 438 B.R. 354, 2010 WL 727969, at *3 (Bankr. 6th Cir. 2010) (unpublished table opinion) (quoting In re Colvin, 288 B.R. 477, 481-82 (Bankr. E.D. Mich. 2003) (citations omitted)).

When a debtor reports an omitted asset before or at the § 341 meeting, this may negate an indication of intent to conceal. In re Doan, 672 F.2d at 833-34; Gold v. Guttman (In re Guttman), 237 B.R. 643, 648 (Bankr. E.D. Mich. 1999). Also, when a debtor encounters "unusual and chaotic circumstances" during the time of the bankruptcy filing, such factors may be relevant to assist the court in determining whether the debtor had an intent to conceal or was otherwise in bad faith. Corcoran v. Publow, 418 B.R. 231, 235 (E.D. Mich. 2009) (it was proper for bankruptcy court to examine "unusual and chaotic circumstances surrounding the [d]ebtors' Chapter 7 bankruptcy filing;" one factor involved the closing of the debtors' attorney's office).

When examining whether a nondisclosure of a tax refund is intentional or not, this court agrees that "[i]nadvertence, neglect and carelessness is somewhat common in the preparation of initial bankruptcy papers, perhaps too common." In re Colvin, 288 B.R. at 483. When a debtor alleges a failure to disclose was inadvertent, a court must assess all circumstances to determine whether the assertion is well-grounded or whether intentional concealment occurred. Id. at 482. When a court finds that a failure to disclose a tax refund was "intentional or at least reckless," a remedy for a debtor "evad[ing] the law and cheat[ing] creditors" is to sanction that debtor by denying the amended exemption. Id. at 483-84. Also, "from a legal perspective, reliance on the advice of counsel can save a debtor from the consequences of failing to disclose assets only when that reliance is reasonable and in good faith." Id. at 483 (emphasis supplied)

(citations omitted).   Also, "[d]ebtors cannot be permitted to exempt property by self-help." Id.

In this case, the Debtors initially failed to disclose their tax refunds or exempt those refunds in their original schedules filed with the court.   Those schedules were signed under penalty of perjury and they were incorrect.   However, the Debtors relied upon the (improper) advice of the Debtors' Attorney, disclosed the estimated amount of their expected refunds at the § 341 meeting and later filed, not one but, two amendments to accurately disclose the refund.   It is also noteworthy that the Debtors had a large amount of unused federal catchall exemptions; this is not an instance when a debtor had "maxed out" exemptions and tried to get more than he was entitled to by "self-help" nondisclosure to "cheat creditors."   Also, it is important to consider the entire situation before the bankruptcy filing or shortly after the filing until the amendments were eventually filed.   The Debtors were in turmoil with job losses, serious family health problems, moving expenses in an attempt to find work, lack of income, eviction from their rented property and, finally, homelessness.   The court also finds the Debtors to be extremely honest and, very regretfully, equally unfortunate.

These Debtors did not have the requisite intent to conceal the tax refunds.   They did not act in bad faith.   They did not engage in any reckless indifference.

The court must now consider other issues relating to possible denial of the Debtors' amended exemptions.

E.   *Should the Amended Exemption Be Denied Because of Resulting Prejudice to Creditors?*

To date, the Sixth Circuit has not held,[20] one way or the other, whether prejudice to creditors or the trustee may permit a bankruptcy court to deny a debtor's amended exemption. This court believes that, under appropriate factual circumstances, a court may, and indeed should, deny an amended exemption when substantial prejudice would occur based upon a debtor's "gamesmanship" in amending exemptions. A typical scenario would be when a debtor is "maxed out" regarding his exemptions and a trustee begins to administer a non-exempt asset, e.g., the trustee lists real property for sale and obtains a purchase offer for court approval or when the trustee prepares for and schedules an auction sale regarding tangible personal property.

After time is spent and expense is incurred in reliance upon a debtor's list of exemptions, the debtor then amends exemptions to attempt to frustrate the trustee's continued administration of the otherwise non-exempt asset. This is the type of circumstance that would result in a possible denial of a debtor's belated amendment. See, e.g., In re Akulova, 407 B.R. 602 (Bankr. D. Del. 2009) (debtor waited 11 months to claim personal injury action as exempt by withdrawing exemption regarding abandoned property to attempt to take the litigation settlement proceeds from the estate; court denied prejudicial amendment as "inherently inequitable"); In re Cudeyro,

---

[20]   In a discussion by one Michigan bankruptcy judge, it is stated that the court "does not have discretion to disallow amendments when the sole ground for objection is prejudice to the trustee." In re Iwasko, No. 05-83036, 2006 WL 2855040, at *3 (Bankr. E.D. Mich. Oct. 4, 2006). Iwasko seems to indicate there is a "specific ruling" by the Sixth Circuit in Lucius v. McLemore, 741 F.2d 125 (6th Cir. 1984) which says the ground to disallow amendments to exemptions is bad faith or concealment of assets. The court respectfully disagrees with Iwaska. The Sixth Circuit has been silent on the "prejudice" issue. It has not yet been called upon to decide it.

213 B.R. 910, 919 (Bankr. E.D. Pa. 1997) ("Prejudice may arise, for example, where a trustee has engaged in efforts to sell certain property, which efforts he or she might have foregone had the debtor initially claimed such property as exempt."). Prejudice to creditors, the trustee or the bankruptcy estate, under appropriate circumstances, may result in denial of a debtor's amendment to exemptions.[21] Kaelin v. Bassett (In re Kaelin), 308 F.3d 885, 890 (8th Cir. 2002) ("If a proposed amendment to exempt a claim will prejudice creditors, a court may deny the debtor's motion to amend."); Martinson v. Michael (In re Michael), 163 F.3d 526, 529 (9th Cir. 1998) (a bankruptcy court has discretion to deny an amendment to exemptions based upon prejudice); In re Yonikus, 996 F.2d 866, 872 (7th Cir. 1993) (if an amendment would prejudice creditors or third parties if may be denied); In re Calder, 973 F.2d 862, 867 (10th Cir. 1992) ("An amendment may be denied, however, if there is . . . prejudice to creditors."); Stinson v. Williamson (In re Williamson), 804 F.2d 1355, 1358 (5th Cir. 1986) (prejudice may justify denying a debtor's amendments to exemptions); Arnold v. Gill (In re Arnold), 252 B.R. 778, 784 (Bankr. 9th Cir. 2000) (bad faith or prejudice may result in denial of amended exemption); In re Meyers, 431 B.R. 823, 824 (Bankr. E.D. Wisc. 2010) (there is "a judicially created exception to [Bankruptcy] Rule 1009 . . . where the amendment would prejudice creditors or third parties"); In re Waller, 424 B.R. 306, 312 (Bankr. S.D. Ohio 2010) (even in the absence of bad faith or concealment, a bankruptcy court "may conclude that it is not appropriate to allow an amendment if the amendment would result

---

[21] Many decisions couple possible prejudice together with bad faith and intentional concealment. See, e.g., In re Doan, 672 F.2d at 833 ("a court might deny leave to amend [exemptions] on a showing of a debtor's bad faith or of prejudice to creditors"; however, the 11th Circuit, in considering the appeal, found no prejudice existed on the record).

in prejudice to creditors"), aff'd, 2010 WL 3521956 (Bankr. 6th Cir. Sept. 7, 2010); In re Shethi, 389 B.R. 588, 605 (Bankr. N.D. Ill. 2008) (prejudice to creditors may result in denial of amendment to exemptions if it can be shown creditors changed their posture in reliance upon original exemptions); In re Cudeyro, 213 B.R. at 919 (changing an exemption when a trustee is prepared to sell property, or after a distribution has already been made, or when there is an "inordinate delay" that hinders administration, might all constitute "prejudice").

A simple delay, by itself, in claiming or amending an exemption does not constitute prejudice. In re Doan, 672 F.2d at 833; In re Arnold, 252 B.R. at 787 (citing Andermahr v. Barrus (In re Andermahr), 30 B.R. 532, 534 (Bankr. 9th Cir. 1983)). However, an unreasonable delay due to a debtor's lack of diligence, coupled with other prejudice, may result in denial of an amended exemption. Shapiro v. First Franklin Fin. Corp. (In re Rechis), 339 B.R. 643, 646 (Bankr. E.D. Mich. 2006) (trustee spent approximately 84 hours to prepare for and litigate avoidance action; substantial administrative expenses resulted from debtor's 18 month delay in amending exemption).

In assessing whether sufficient prejudicial conduct or inaction has occurred, the bankruptcy court should "balance the prejudice to the debtor of disallowing the exemption against the prejudice to third parties in allowing the exemption." In re Arnold, 252 B.R. at 785. This court believes, similarly to the nondisclosure and bad faith analysis, that examination of all the factual circumstances is necessary. In this case, the Debtors' delay (42 days after the § 341 meeting) in claiming their tax refunds as exempt did not prejudice the Trustee or the creditors of the estate. The Trustee, other

41

than corresponding with the IRS and questioning the Debtors, spent no time in preparing for or litigating the contested matter until *after* the Debtors promptly orally advised him of the tax refunds and the Debtors then filed, with some justifiable delay, their official amendments to Schedules B and C.  Also, the facts are clear that the Debtors had a large amount of their § 522(d)(5) catchall exemption available to exempt their tax refunds.  Looking at all the circumstances, and balancing the potential harms, the Trustee has not adequately established the requisite prejudice that would result in denial of the Debtors' amended exemptions.

F.      *Should the Debtors' Attorney Be Held Accountable For the Delay in Amending the Debtors' Exemptions?*

This case definitely "should not serve as a model for a petitioner in bankruptcy to follow."  Doan, 672 F.2d at 834.  (This statement by the 11th Circuit was made more than 28 years ago and is equally applicable to both debtors and bankruptcy attorneys today.)  The Debtors' Attorney could have done much better, should have done much better, and (the court believes) will do much better in the future.  Exemptions are one of the most important issues for individual consumer bankruptcy debtors.  All debtors' attorneys should be well-versed in the various choices debtors may have in selecting state or federal exemptions.  (Again, Michigan is a non-opt-out state.)  A wise and timely election of exemptions will help maximize a debtor's fresh start.

In this case, countless hours of litigation by the parties' attorneys, and the attendant uncertainty, frustration and aggravation faced by the Debtors, would have been eliminated if the Debtors' Attorney had initially provided good advice to the Debtors and made certain that the *original* schedules submitted provided maximum disclosure.  When in doubt, "overdisclose;" when exemptions are available, "list them."

42

These Debtors had more than $20,000 in unused federal catchall exemptions. These Debtors historically received tax refunds. These Debtors had almost no other real or personal property to exempt. Given these facts, the Debtors' Attorney should have advised the Debtors to estimate (or over-estimate) tax refunds that might be received and list the total estimated refunds as exempt under § 522(d)(5).

The Debtors' Attorney failed to properly advise the Debtors. What may be done to hold the attorney accountable?

The Debtors' Attorney, as a "debt relief agency," § 101(12A), is obligated to provide debtors, i.e., "assisted persons," § 101(3), including these Debtors, sufficient information on "how to determine what property is exempt," § 527(c)(3). Further, the Debtors' Attorney certifies that, to the best of her knowledge after reasonable inquiry, the information on the Debtors' schedules is correct. § 707(b)(4)(C) and (D). If the Debtors' Attorney has violated her obligations, she may be held accountable in accordance with Bankruptcy Rule 9011(c). In this case, the court has decided not to sanction the Debtors' Attorney. The court, in an attempt to encourage the Debtors' Attorney to be more careful and to "deter repetition of such conduct or comparable conduct," Rule 9011(c)(2), merely cautions the Debtors' Attorney to have her future debtor clients disclose estimated tax refunds on the original schedules and, when an exemption is available, list the estimated refunds as exempt.

Also, this court might also require the Debtors' Attorney to return all, or a portion of, the compensation she received from the Debtors. § 329(b)(2). In this instance, the court has determined to permit the Debtors' Attorney to retain her compensation without the court now holding a hearing regarding possible disgorgement of the compensation.

43

This non-action is based on two major factors. First, the Debtors' Attorney diligently represented the Debtors in this "exemption battle" with the Trustee. Based upon statements during the hearing, the court understands that the Debtors' Attorney has not, and will not, charge the Debtors any additional fees. Second, and equally important, the Debtors' Attorney has historically attended many bankruptcy education seminars and has gradually become more knowledgeable and proficient in practicing bankruptcy law for her clients.[22]

Summarizing, after careful consideration, no action will be taken by the court regarding the Debtors' Attorney's representation of her clients in this particular case.

## V. CONCLUSION.

Based upon the court's specific findings of fact, and the legal analysis above, the Trustee's objections to the Debtors' amended exemptions are overruled. Further, the Trustee's motion for turnover of the Debtors' tax refunds is denied.

A separate order shall be entered accordingly.

HONORABLE JAMES D. GREGG
Chief United States Bankruptcy Judge

Signed this 4th day of
January, 2011
at Grand Rapids, Michigan

---

[22]   Michigan is one of the few states without a continuing legal education requirement. This judge, for many years, has encouraged bankruptcy attorneys to attend educational sessions of their own choice, including the annual local bankruptcy seminar that has been held in this district for twenty-two years. This judge compliments the many attorneys in this district, including the Debtors' Attorney, who have elevated their legal knowledge of practice and procedure by attending bankruptcy education programs.